IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. _____

**DOUGLAS BRUCE**, an Individual,

    Plaintiff,

v.

**CITY AND COUNTY OF DENVER**, a municipal government within the State of Colorado,
**STERLING CONSULTING CORPORATION**, a Colorado Corporation,
**STATE OF COLORADO**,
**FAIRFIELD & WOODS, P.C.**, a Colorado Professional Corporation, and
**MACHOL & JOHANNES, LLC**, a Colorado Limited Liability Corporation

    Defendants.

## COMPLAINT

Plaintiff Douglas Bruce, by and through undersigned counsel of record, hereby complains against Defendants City and County of Denver, Sterling Consulting Corporation, State of Colorado, Fairfield & Woods, P.C., and Machol & Johannes, LLC (collectively, "Defendants") and requests relief as follows:

**PARTIES, JURISDICTION, AND VENUE**

1.     Plaintiff Douglas Bruce ("Plaintiff") is an individual who resides in El Paso County, Colorado.

2.	Defendant City and County of Denver ("Denver") is a governmental entity created and functioning pursuant to Colorado statutes and governing the geographical area known as Denver, Colorado.

3.	Defendant Sterling Consulting Corporation (the "Receiver," which was appointed by the Colorado State Court**)** is a Colorado Corporation, with a principal place of business in Denver, Colorado.

4.	The State of Colorado ("Colorado") is a State of the United States, with a principal place of business in Denver, Colorado.

5.	Fairfield & Woods, P.C. ("F&W") is a Colorado Professional Corporation, with a principal place of business in Denver, Colorado.

6.	Machol & Johannes, LLC ("M&J"), is a Colorado Limited Liability Company, with a principal place of business in Denver, Colorado.

7.	Jurisdiction is proper in this Court under, inter alia, 42 U.S.C. §§ 1983, 1988 as well as 28 U.S.C. § 1343, and arises in order to enforce provisions of the United States Constitution.  Declaratory relief is authorized by 28 U.S.C. §§ 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure.

8.	The Court has supplemental jurisdiction of any state law claim under 28 U.S.C. § 1367.

9.	Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) because the misconduct of Defendants occurred in and the defendants reside in and/or their principal places of business are located in Colorado.

10. At all times pertinent to this action, Denver was acting under color of state law as a political subdivision of the State of Colorado, with powers vested in it by the State of Colorado and/or Denver and within the scope of their authority granted by Colorado State law, Denver ordinances and/or Denver policies, and practices.

11. Defendants' conduct as complained herein was pursuant to and in apparent conformity with the rules, customs, regulations, ordinances, policies, and practices of Denver.

**GENERAL ALLEGATIONS**

12. Plaintiff is the holder of two notes (the "Notes") which are secured by recorded deeds of trust (the "Trust Deeds") on two different parcels of real estate. The first parcel is located at 601-609 Lipan St., Denver, Colorado 80204 (the "Lipan Property"), and the second parcel is located at the intersection of 37th and York, also in Denver, Colorado (the "York Property," and collectively with the Lipan Property, the "Properties").

13. In 1997, Plaintiff transferred the Lipan Property to Tele Comm Resources LP ("Tele Comm") in exchange for a note in the amount of $230,000.00 (the "Lipan Property Note"). The present value of the Lipan Property Note is over $600,000.00, plus interest accruing at the rate of 10% per annum.

14. Plaintiff's trust deed on the Lipan Property was recorded in 1998, securing a face value of $230,000.00 in indebtedness plus interest (the "Lipan Property Deed").

15. In 2003, Plaintiff transferred the York Property to Tele Comm in exchange for a note in the amount of $2.4 million (the "York Property Note"). The present value of the York Property Note is at least $6 million plus interest accruing at the rate of 10% per annum.

16. Plaintiff's trust deed on the York Property was recorded in 2004, securing a face value of $2.4 million plus interest (the "York Property Deed").

17. The Notes and Deeds have been extended or reaffirmed as required under Colorado law, and/or Tele Comm does not contest the validity of the same.

18. In 2013, Tele Comm deeded ownership of the Properties to Roger McCarville ("Mr. McCarville"), who accepted the Properties subject to Plaintiff's encumbrances.

19. At some later date, Mr. McCarville attempted to deed the Properties back to Tele Comm, but these deeds were ineffective because Tele Comm did not know of or accept the deeds. Thus, Mr. McCarville was and remained the rightful owner of the Properties.

20. In 2015, Denver filed several lawsuits against Tele Comm in an effort to collect on certain fines and assessments it had issued against the Properties based on alleged violations of city ordinances, which were ultimately consolidated into one action given Case Number 2015CV30918 proceeding in the Denver County District Court, State of Colorado (the "State Court Litigation").

21. The Receiver was appointed to oversee the management, evaluation of claims concerning, and ultimately the disposition of the Properties in the State Court Litigation.

22. Inexplicably, the State Court Litigation proceeded against Tele Comm, even though Tele Comm and Plaintiff presented clear evidence to Denver, the Receiver, Colorado (through its judicial arm and its employees/judges), and their counsel F&W and M&J (collectively the "Law Firm Defendants"), that Mr. McCarville was the owner of the Properties.

4

23. Denver, the Receiver, and the Law Firm Defendants opted to ignore this evidence and press ahead against the Properties essentially *in absentia* so that they could liquidate the Properties and keep the proceeds for themselves with as little resistance as possible.

24. Plaintiff was the real party in interest in the State Court Litigation by way of the Trust Deeds. However, Plaintiff was not made a party to the case even though he repeatedly asked to be made a party to the State Court Litigation so that he could defend his interests.

25. Colorado permitted the action to proceed in this fashion and in fact actively encouraged the same through the decisions of the judges who oversaw the State Court Litigation.

26. By the time the State Court Litigation reached its conclusion, the outrageous fines and penalties that Denver ordinances permitted Denver to levy against the Properties, which included unconstitutionally excessive fines of $999 per day simply for having an unoccupied building, had reached into the millions of dollars.

27. Denver levied additional fines as well, including for not maintaining the building, trash accumulation, and not maintaining the yard.

28. Denver assessed these fines even though Defendants would not let Plaintiff maintain the yards.

29. Additionally, Denver removed the trash dumpsters that had been placed at the York Property and paid for by Plaintiff through property taxes.

30. Denver also destroyed a heavy duty chain at the York Property that Plaintiff installed to prevent illegal dumping.

31. A significant portion of these fines accrued while Mr. McCarville was the owner of the Properties.  Nonetheless, the State Court Litigation moved forward with Tele Comm as the defendant, and paid for out of equity owed to Plaintiff.

32. When combined with the thousands upon thousands of dollars of unnecessary fees and expenses charged by the Receiver, these fines exceeded all of the equity in the Properties that rightfully belonged to Plaintiff via his Trust Deeds.  The millions in excessive fines violated the Eighth Amendment.

33. The aforementioned activities constitute an unconstitutional taking under the 5th and 14th Amendments of the United States Constitution.  All of Plaintiff's equity was taken through this scheme, and he has not received just compensation for the same.

34. The Receiver violated its fiduciary duties by committing waste for its own benefit in the management of the receivership.  For example, Plaintiff has a right to maintain the Properties under the Deeds.  However, the Receiver blocked him from doing so, instead opting to pay exorbitant maintenance fees to the Receiver's son.

35. As a legitimate claimant on the receivership estate, the Receiver owed Plaintiff a fiduciary duty to treat his claims fairly and pay the monies owed to him pursuant to the Notes and the Trust Deeds.

36. From the outset, the Receiver disregarded this responsibility.  The Receiver consistently treated Plaintiff's Trust Deeds as fraudulent or illegitimate for no reason.  For example, in the Receiver's first report to the court in the State Court Litigation, the Receiver

assigned the York Trust Deed, which had a face value of $2.4 million, a value of $1.00.  The Receiver also intervened to prevent Plaintiff from foreclosing on the Lipan Trust Deed.

37. Instead of working to protect Plaintiff's claims against the Properties, the Receiver worked at every turn to invalidate the Trust Deeds so that the maximum amount of proceeds could be paid to Denver, itself, and the Law Firm Defendants.

38. The Receiver filed multiple documents with the Court attempting to void the Trust Deeds, which included misrepresenting the nature of the Trust Deeds to convince the trial court to remove the Trust Deeds from the Properties.  For example, the Receiver argued that the Trust Deeds were invalid because there was no evidence that Plaintiff had actually lent funds to Tele Comm, ignoring the fact that Trust Deeds can also be used to secure a seller financed transaction.

39. This favoritism of one claimant over another, and its own fees, was in clear violation of the Receiver's fiduciary duties to Plaintiff.

40. The Receiver accomplished the foregoing with the assistance and affirmative acts of its counsel, F&W.

41. As explained above, the Lipan Trust Deed was recorded in 1998 and the York Trust Deed was recorded in 2004, giving it priority over any liens or encumbrances filed after that date.

42. However, Denver has enacted an ordinance which allows it to assert priority over other earlier-filed liens when it is attempting to collect on the types of fines and fees it asserted

against the Properties in the State Court Litigation, without any way for Plaintiff to challenge the same.

43. In this way, the Denver ordinance unconstitutionally impairs Plaintiff's contracts and violates due process.

44. These ordinances have the apparent authority of state law under Colorado statutes. The ordinances purport to override state law on lien priority, and thus alter the constitutional definition of property.

45. These ordinances, in conjunction with the excessive fees and fines it has granted itself the permission to issue, do not advance a legitimate public purpose, but instead exist as a method for Denver, the Receiver, and the Law Firm Defendants to enrich themselves at the expense of unsuspecting property owners and prior lienholders.

46. The fines against the Properties continued to accrue and were assessed against Tele Comm even though Tele Comm was not the owner of the Properties.

47. Assessing a $999 per day fine against an entity which does not even own the property, and then using the equity of an unsuspecting third party lienholder to pay those fines, constitutes an excessive fine under the 8th Amendment of the United States Constitution, which is applicable to Defendants pursuant to *Timbs v. Indiana*, 139 S. Ct. 682 (2019), a unanimous decision of the United States Supreme Court.

48. Through the State Court Litigation, and with the participation of Colorado through its judicial officers, the Receiver and Denver ultimately obtained permission from the court to sell both of the Properties and retain the proceeds thereof.

49. Upon information and belief, the invoices of the Law Firm Defendants were also paid from the proceeds of the unlawful sale of the Properties.

50. By the conduct of Defendants described herein, Plaintiff has been damaged in an amount to be proven at trial, but not less than $7 million.

## FIRST CAUSE OF ACTION
## DEPRIVATION OF PROPERTY UNDER FIFTH AMENDMENT RIGHTS AGAINST DENVER AND COLORADO

51. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if repeated herein verbatim.

52. Denver maintains certain policies, practices, and ordinances through which it has permitted itself to issue excessive and unconstitutional fines against real property and then place any lien in connection with the same ahead of the liens that may be held by other parties, such as Plaintiff.

53. As a result of this policy, practice, custom, or procedure, Defendants have unlawfully deprived Plaintiff of his private property as alleged herein and will be proven at trial.

54. These ordinances, in conjunction with the excessive and unconstitutional fees and fines it has granted itself the permission to issue, do not advance a legitimate public purpose, but instead exist as a method for Denver to enrich itself at the expense of unsuspecting property owners and prior, senior lienholders.

55. Denver is subject to the Fifth Amendment's prohibition against unconstitutional deprivation of property and denial of substantive and procedural due process pursuant to the Fourteenth Amendment to the United States Constitution.

56. Denver has violated Plaintiff's rights under the Fifth and Fourteenth Amendments of the United States Constitution, subjecting it to liability under 42 U.S.C. § 1983.

57. Colorado actively participated in this unconstitutional scheme through its judicial branch and the employment of judicial officers, without whose explicit consent and affirmative actions Denver could not have enforced laws which unconstitutionally deprive Plaintiff of his property.

58. Plaintiff has been damaged by these unconstitutional acts, in an amount to be proven at trial, and is therefore entitled to declaratory relief, monetary damages, and attorney fees based on Denver's and Colorado's violation of his constitutional rights.

**SECOND CAUSE OF ACTION**
**VIOLATION OF PROCEDURAL DUE PROCESS--FOURTEENTH AMENDMENT**
**AGAINST DENVER AND COLORADO**

59. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if repeated herein verbatim.

60. As the holder of the Deeds and the Notes, Plaintiff has a legitimate property interest therein.

61. As alleged herein, Plaintiff's property interest in the Deeds and the Notes was abridged, under the color of state law, without appropriate due process.

62. Denver maintains certain policies, practices, and ordinances through which it has permitted itself to issue excessive and unconstitutional fines against real property and then place a lien ahead of liens that may be held by other parties, such as Plaintiff.

63. As a result of this policy, practice, custom, or procedure, Defendants have unlawfully deprived Plaintiff of his private property and denied him his substantive and procedural due process rights as alleged herein and will be proven at trial.

64. As such, Denver and Colorado have violated Plaintiff's rights under the Fifth and Fourteenth Amendments of the United States Constitution, subjecting them to liability under 42 U.S.C. § 1983.

65. Colorado actively participated in this unconstitutional scheme through its judicial branch and the employment of judicial officers, without whose explicit consent and affirmative actions Denver could not have enforced laws which violate Plaintiff's due process rights.

66. Plaintiff has been damaged by these unconstitutional acts, in an amount to be proven at trial, and is therefore entitled to declaratory relief, monetary damages, and attorney fees based on Denver's and Colorado's violation of his constitutional rights.

**THIRD CAUSE OF ACTION**
**VIOLATION OF SUBSTANTIVE DUE PROCESS**
**AGAINST DENVER AND COLORADO**

67. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if repeated herein verbatim.

68. As the owner of the Deeds and the Notes, he has a legitimate property interest therein which is deserving of protection under substantive due process.

69. As alleged above and as will be proven at trial, Defendants have acted in an arbitrary and capricious manner with respect to Plaintiff's rights in the Property, including by issuing excessive and unconstitutional fines which Plaintiff had no ability to challenge, and

11

working in conjunction with the Receiver to invalidate Plaintiff's liens to benefit Denver and Receiver, all to the complete detriment of Plaintiff.

70. Denver maintains certain policies, practices, and ordinances through which it has permitted itself to issue excessive and unconstitutional fines against real property and place a lien in connection with the same ahead of the liens that may be held by other parties, such as Plaintiff.

71. The Denver ordinances apparently permit Denver to issue those fines against an entity which does not even own the property at the time in question, sue that non-owner to collect on the fines, and then use the equity of an innocent third party to pay those fines without giving that innocent third party the ability to challenge the validity of the fines.

72. As a result of this policy, practice, custom, or procedure, Defendants have unlawfully deprived Plaintiff of his private property and denied him his substantive and procedural due process rights as alleged herein and will be proven at trial.

73. These ordinances, in conjunction with the excessive and unconstitutional fees and fines it has granted itself the permission to issue, do not advance a legitimate public purpose, but instead exist as a method for Denver to enrich itself at the expense of unsuspecting property owners and prior lienholders.

74. These actions are outrageous and of such a magnitude, i.e., 100% of the value of the two Properties, that it truly shocks the conscience, meriting treble and/or punitive damages.

75. Colorado actively participated in this unconstitutional scheme through its judicial branch and the employment of judicial officers, without whose explicit consent and affirmative actions Denver could not have enforced laws which violate Plaintiff's due process rights.

76. As such, Denver and Colorado have violated Plaintiff's substantive due process rights under the United States Constitution, subjecting it to liability under 42 U.S.C. § 1983.

77. Plaintiff has been damaged by these unconstitutional acts, in an amount to be proven at trial, and is therefore entitled to declaratory relief, monetary damages, and attorney fees based on Denver's and Colorado's violation of his constitutional rights.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE EIGHTH AMENDMENT AGAINST DENVER AND COLORADO**

78. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if repeated herein verbatim.

79. Denver issued massively excessive and unconstitutional fines against the Properties, including fees of $999 per day simply for having an unoccupied building, which accumulated into the millions of dollars by the time the State Court Litigation had concluded.

80. Due to the sheer size of the accumulated fines, they cannot be viewed to be remedial in nature. The fines levied against the Properties therefore constitute a punishment as that term is understood in the context of the Eighth Amendment.

81. These fines were imposed by and paid to Denver, a municipal governmental entity.

82. As alleged herein and will be proved at trial, these fines exceeded the entirety of the equity in the Properties, which rightfully belonged to Plaintiff.

83. Plaintiff was therefore forced by operation of law to lose his entire equity through Denver's illegal litigation charade. Plaintiff was not allowed to participate (except by futile and ignored written objections); this sham was itself a gross denial of due process of law.

84. Colorado actively participated in this unconstitutional scheme through its judicial branch and the employment of judicial officers, without whose explicit consent and affirmative actions Denver could not have enforced its unconstitutional fines and taking.

85. The amount of the fines, their accumulation, and the fact that they were seized from Plaintiff as opposed to from the property owner, all demonstrate that the fines were excessive and unconstitutional under the Eighth Amendment of the United States Constitution.

86. Denver and Colorado are subject to the Eighth Amendment's prohibition against unconstitutional deprivation of property pursuant to the Fourteenth Amendment to the United States Constitution pursuant to *Timbs v. Indiana*, 139 S. Ct. 682 (2019).

87. Denver and Colorado have violated Plaintiff's rights under the Eighth Amendment of the United States Constitution, subjecting it to liability under 42 U.S.C. § 1983.

88. Plaintiff has been damaged by these unconstitutional acts, in an amount to be proven at trial, and is therefore entitled to declaratory relief, monetary damages, and attorney fees based on Denver's and Colorado's violation of his constitutional rights.

## FIFTH CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTIES AGAINST THE RECEIVER

89. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if repeated herein verbatim.

90. The Receiver sought to be and was appointed by the court to be a fiduciary. As a result, it owed a fiduciary duty to Plaintiff as a legitimate claimant on the receivership estate.

91. As described herein and will be proven at trial, the Receiver breached that fiduciary duty.

92. As described herein and will be proven at trial, the Receiver converted Plaintiff's property to itself through the imposition of exorbitant receivership fees, and to Denver through Denver's retention of the remaining sale proceeds, all with the imprimatur of the Colorado state court.

93. Plaintiff has been damaged by the Receiver's breach of its fiduciary duties to him, in an amount to be proven at trial.

94. The Receiver's breaches of its fiduciary duties were willful, wanton, and committed with a reckless disregard for the rights of Plaintiff, warranting punitive and exemplary damages in addition to compensatory damages.

## SIXTH CAUSE OF ACTION
## CONSPIRACY TO VIOLATE CONSTITUTIONAL RIGHTS
## AGAINST ALL DEFENDANTS

95. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if repeated herein verbatim.

96.     As alleged herein and will be proven at trial, the Receiver reached an agreement and worked in concert with Denver and the Law Firm Defendants to deny Plaintiff his constitutional rights.

97.     The evidence of such an agreement includes, inter alia, an explicit or implicit agreement to proceed in the State Court Litigation against Tele Comm, rather than Mr. McCarville, knowing that Tele Comm had neither the resources, incentive, nor the ability to defend Denver's claims against it.

98.     Additionally, the Receiver and the Law Firm Defendants denied Tele Comm's right to appear and defend its interest by claiming it had to be done through counsel, and also denied Plaintiff's right to defend and appear his interests by arguing against making Plaintiff a party to the State Court Litigation, thereby actively ensuring Plaintiff's due process rights were violated.

99.     Furthemore, and upon information and belief, the Receiver and Denver (through the Law Firm Defendants) reached an agreement whereby they would use the State Court Litigation to sell the Properties, keep the proceeds for themselves, thereby denying Plaintiff the equity therein, all in an effort to retaliate against him for his years of work on behalf of Colorado taxpayers to reduce their tax burdens, specifically through the passage of the Colorado Taxpayer's Bill of Rights (TABOR), Article X, Section 20 of the Colorado Constitution.

100.    Based on this agreement, and given the fact that the Receiver was appointed by the state court to perform its duties in the State Court Litigation, the Receiver and the Law Firm Defendants were therefore acting under the color of state law.

101. Upon information and belief, Denver, the Receiver, and the Law Firm Defendants timed the proceedings of the State Court Litigation to transpire when Plaintiff was in prison for donating $190,000 (which was his entire county commissioner salary for 3 years) to a 501(c)(3) charity, as was approved in writing by the Internal Revenue Service. At the trial in that matter, Colorado stated that Plaintiff had made the donation to evade $129.00 in state income tax.

102. Furthermore, Colorado actively participated in this unconstitutional scheme through its judicial branch and the employment of judicial officers, without whom the remaining Defendants could not have affected their unconstitutional conspiracy.

103. As such, all Defendants are equally liable under 42 U.S.C. § 1983 for the constitutional violations alleged herein.

104. Plaintiff has been damaged by these unconstitutional acts, in an amount to be proven at trial, and is therefore entitled to declaratory relief, monetary damages, and attorney fees based on Defendants' violation of his constitutional rights.

WHEREFORE, Plaintiff requests relief as follows:

105. On his first, second, third, fourth, and sixth causes of action, for damages, including actual, punitive, compensatory, treble, and special damages in an amount to be proven at trial but not less than $7 million, plus attorney fees, court costs, and costs of litigation;

106. On his fifth cause of action, damages, including punitive or exemplary damages, in an amount to be proven at trial, but not less than $7 million, plus attorney fees, court costs, and costs of litigation;

107. On all causes of action, for actual, compensatory, statutory, punitive, exemplary, or other damages of any kind or type to which he is entitled; for an award of attorney fees, court costs, and costs of litigation; for a declaratory judgment or order declaring that Defendants' conduct as described above violated the constitutional rights of Plaintiff as protected by the United States Constitution, for a declaratory judgment or order declaring the relevant Denver ordinances, policies, and procedures facially unconstitutional and as applied to Plaintiff, declaring any actions taken by Defendants void *ab initio*; and for any other and further relief to which Plaintiff may be entitled under law or equity and which the Court may find just and appropriate under the circumstances; and

108. For an award of attorney fees and court costs under 42 U.S.C. § 1983 and § 1988.

## JURY TRIAL DEMANDED

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on any claims so triable.

DATED this 17th day of July, 2020.

NONPROFIT LEGAL SERVICES OF UTAH


  /s/ Nathan R. Garcia
***Nathan R. Garcia, #53608***
NONPROFIT LEGAL SERVICES OF UTAH
623 East 2100 South, Suite B1
Salt Lake City, Utah 84106
Tel: (385) 419-4111
Fax: (801) 401-3504
Email: nathan@nonprofitlegalservices.com
*Attorneys for Plaintiff Douglas Bruce*