## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-02099-RBJ

**DOUGLAS BRUCE**, an Individual,

    Plaintiff,

    v.

**CITY AND COUNTY OF DENVER**, a municipal government within the State of Colorado,
**STERLING CONSULTING CORPORATION**, a Colorado Corporation,
**STATE OF COLORADO**,
**FAIRFIELD & WOODS, P.C.**, a Colorado Professional Corporation, and
**MACHOL & JOHANNES, LLC**, a Colorado Limited Liability Corporation,

    Defendants.

---

## DEFENDANTS' JOINT MOTION TO DISMISS COMPLAINT
## PURSUANT TO FED. R. CIV. P. 12(B)(1) AND (6)

---

Defendants, City and County of Denver ("Denver"), State of Colorado ("State"), Fairfield & Woods, P.C. ("F&W"), and Machol & Johannes, LLC ("M&J"),[1] (collectively "Defendants") through undersigned counsel, respectfully request this court dismiss Plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and (6).[2]

## INTRODUCTION

This case stems from extensive prior litigation in Colorado State Court and involves Denver properties that were assessed civil penalties under Denver's Neglected and Derelict Building Ordinance. Although this dispute can be traced back to civil penalties administratively

---

[1] Defendant Sterling Consulting Corporation ("Sterling") has not been served and has not appeared in this action.

[2] Following conferral, the Court granted Defendants permission to file this motion. ECF 18.

assessed against certain properties in 2010, Plaintiff's Complaint focuses on a 2015 receivership

action ("State Court Litigation") involving properties in which Plaintiff claimed, and now claims,

to own an interest.  Plaintiff asserts that his interests were ignored in the State Court Litigation,

that the subject properties were liquidated without regard to his interests, that the litigation

resulted in various violations of his constitutional rights, and that the defendants conspired to

violate his constitutional rights.

Despite the framing of his claims, however, this action is just the latest attempt by

Plaintiff to press his arguments in a venue that has not previously rejected them.  Plaintiff's

Complaint is a collateral attack on a state court judgment and is subject to the *Rooker-Feldman*

doctrine, as well as Colorado preclusion law.  Each defendant is also immune from suit for

various, distinct reasons.  Lastly, Plaintiff's conspiracy claim fails under the recognized *Twombly*

and *Iqbal* plausibility tests and should be dismissed under Fed. R. Civ. P. 12(b)(6).

## BACKGROUND

### A.    Plaintiff's Complaint

Plaintiff's Complaint alleges Plaintiff holds two notes secured by two deeds of trust on

two properties in Denver.  ECF 1 at ¶ 12.  The properties are located at 601-609 Lipan St.,

Denver, Colorado 80204 (the "Lipan Property"), and the second is located at the intersection of

37th and York, also in Denver, Colorado (the "York Property", and collectively the

"Properties").[3] *Id.*

In 2015, Denver filed several lawsuits against Tele Comm Resources LP ("Tele Comm")

in Denver County District Court to collect on certain fines and assessments it had issued against

---

[3] The Complaint does not provide any further street address information for the York Property.

the Properties based on alleged violations of the Denver Revised Municipal Code ("DRMC"). The cases were ultimately consolidated into one action under Case Number 2015CV30918 (the "State Court Litigation"), and a receiver, Sterling, was appointed by the Court.  Plaintiff objects to how the State Court Litigation proceeded and that it proceeded against Tele Comm and not the Properties' alleged real owner, Mr. McCarville.  *Id.* at ¶ 22.  Plaintiff contends he was not allowed to participate in the State Court Litigation, except by futile and ignored written objections.  *Id.* at ¶ 83.  He faults all participants, including Denver, its outside counsel M&J, the Receiver, its counsel F&W, and the State, acting through its judicial officers, alleging multiple times in the Complaint that the State Court Litigation was an "unconstitutional scheme."  *Id.* at ¶¶ 33, 57, 65, 75, 84, 102.  He brings constitutional claims based on the Fifth, Eighth, and Fourteenth Amendments against Denver and the State, a breach of fiduciary duty claim against Sterling, and a claim, alleging that all Defendants conspired to violate his constitutional rights.

        **B.**        **The State Court Litigation[4]**

On January 31, 2013, Denver, represented by its outside counsel M&J, initiated a collection action in Denver District Court (Case No. 2013CV30444) to collect civil penalties imposed pursuant to administrative order against the owners of the York Property, Tele Comm and its general partner, Jeff Wright.  Exhibit A, Docket for Case No. 2013CV30444; Exhibit B, York Administrative Order.  Denver then filed a motion for summary judgment on May 29, 2014 against the owners, which was granted by the Denver District Court on July 15, 2014.

---

[4] *See* Fed. R. Evid. 201; *Driskell v. Thompson*, 971 F. Supp. 2d 1050, 1057 n. 8 (D. Colo. 2013)"([T]he Court may consider outside documents subject to judicial notice, including court documents and matters of public record.") (citing *Tal v. Hogan*, 453 F.3d 1244 n. 24 (10th Cir. 2006)).

Defendants appealed that order to the Colorado Court of Appeals (Case No. 14CA1626), which affirmed the grant of summary judgment. *See* Exhibit A.

On March 14, 2015, Denver, again represented by M&J, filed a complaint against Tele Comm as owner of the Lipan Property (Case No. 2015CV30918) for failing to pay civil penalties assessed by Denver's Office of Community Planning & Development pursuant to Denver's Neglected and Derelict Building Ordinance, DRMC 10-138, -139, -140.[5] Exhibit C, Docket for Case No. 2015CV30918.  The penalties were established at an administrative hearing on the matter.  Exhibit D, Lipan Administrative Order. Denver filed a motion for summary judgment in February 2016 regarding the civil penalties for the Lipan Property and the York Property, which the Denver District Court granted on May 2, 2016.

In March 2016, Denver filed a motion, requesting a receiver be appointed to manage the Properties.  On April 15, 2016, the Court issued an order appointing Sterling as the receiver. Exhibit C, Docket for Case No. 2015CV30918. The State Court Litigation stretched for four years and during that time, Plaintiff filed a number of motions and objections, largely based on the arguments he now raises in his Federal Complaint. *Id.*; Exhibit E, Plaintiff's Objections.[6]

On April 6, 2018, the Court issued an order determining the priority of liens on the Properties. Exhibit F, Order Determining Lien Priorities.[7]  The order addressed Plaintiff's deeds of trust claim on the Properties. However, the Denver District Court held that the DRMC

---

[5] The Court can take judicial notice of the ordinances. *Zimomra v. Alamo Rent-A-Car, Inc.*, 111 F.3d 1495, 1504-05 (10th Cir. 1997). The DRMC can be located here: https://library.municode.com/co/denver/codes/code_of_ordinances.
[6]  Plaintiff also participated in several hearings and addressed the Court during those hearings. Transcripts of those hearings can be provided to the Court as needed in order to determine the subject matter jurisdiction issue under *Rooker-Feldman*, as discussed below.
[7] By this time, the receivership included other properties from the 2013 case.

provided for penalty liens for neglected and derelict buildings to be superior to all other liens and that the ordinances were adopted before Plaintiff's deeds of trust were recorded. Thus, the Denver District Court held Plaintiff was on notice of the priority of the City's liens and penalties when he recorded the deeds of trust, and the City could sell the York Street and Lipan Properties.

On July 18, 2018 and August 14, 2018, the Court entered orders confirming the sale of the Lipan Property.[8]  At the conclusion of the State Court Litigation, on April 1, 2019, the Court certified a number of Orders as final judgments pursuant to Colo. R. Civ. P. 54(b), including: (1) April 6, 2018 "Order Determining Priority of Liens"; (2) July 18, 2018 "Order Confirming Sale of Lipan Property"; and (3) August 14, 2018 "Order Confirming Sale of Lipan Property." Exhibit G, April 1, 2019 Orders.

On September 13, 2019, the Court approved the Receiver's Third Report and discharged the Receiver.  Exhibit H, September 13, 2019 Order. Specifically in the September 13th Order, the Denver District Court approved all of the Receiver's actions in the case and found that all of the claims allowed by the Court in the case had been paid by the Receiver, and ordered the Receiver to pay the funds remaining to Denver once the order became final and non-appealable. Further, it ordered that any "party or person who has appeared in this matter, or otherwise has notice of it, is permanently enjoined from bringing any disputes regarding the conduct of the receiver or the actions taken by this Court in this case in any court other than this one or any proper appeal" and that the Court would have "continuing jurisdiction to interpret and enforce

---

[8] On February 22, 2019 and March 11, 2019, the Court also entered orders confirming the sale and conveyance of property located between York and Gaylord Streets and 37th and 38th Avenues, Denver, CO 80204 (described as the "Cheesman Property" in the orders and motion to sell).

the orders of the court in this action." The September 13th order dismissed the case with prejudice, and the Court specifically certified the termination and discharge of the receiver as a final order.

Tele Comm did not appeal either the April 1, 2019 order or the September 13, 2019 order, and the time to do so has long since passed. Plaintiff did not file any type of challenge to either order, and at no point has he asserted he lacked notice of the receivership proceedings. Rather, he filed this action attacking the receivership proceedings and asserting he has a right to do so because he was not a named defendant in the initiating complaint.

## LEGAL STANDARD AND BURDEN OF PROOF

### A. Fed. R. Civ. P. 12(b)(1) Standard

Pursuant to Fed. R. Civ. P. 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction. Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: a facial attack on the complaint's allegations and an attack on the facts upon which subject matter jurisdiction depends. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995). Here, Defendants assert that Plaintiff's constitutional claims are barred by the *Rooker-Feldman* doctrine, which is a challenge to this Court's subject matter jurisdiction. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005). Similarly, Eleventh Amendment immunity is an issue of subject matter jurisdiction. *Fent v. Oklahoma Water Resources Bd.*, 235 F.3d 553, 559 (10th Cir. 2000). Plaintiff has the burden of establishing subject matter jurisdiction. *See Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

**B.  Fed. R. Civ. P. 12(b)(6) Standard**

In deciding a motion pursuant to Rule 12(b)(6), the Court must accept Plaintiff's well-pled allegations as true and construe them in the light most favorable to Plaintiff.  *Archuleta v. Wagner*, 53 F.3d 1278, 1283 (10th Cir. 2008). The complaint must allege facts that, if true, would entitle the plaintiff to relief. Fed. R. Civ. P. 8(a)(2).  The Court must determine whether the complaint sufficiently alleges facts necessary to establish an entitlement to relief under the legal theory proposed.  *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007). "[A] plaintiff's obligation…requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim has facial plausibility when it pleads factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This determination is "context-specific" and "requires the reviewing court to draw on its experience and common sense." *Id.* at 679 (citation omitted).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.*

## ARGUMENT

**A.  Plaintiffs' Claims Improperly Seek to Undo State Litigation**

**1.      This Court Lacks Subject Matter Jurisdiction Under *Rooker-Feldman***

The *Rooker-Feldman* doctrine precludes lawsuits asking the federal court, effectively, to review and reverse unfavorable state court judgments.  *Exxon Mobil Corp.*, 544 U.S. at 283.  Thus, when a litigant seeks a remedy that would "disrupt or undo" a state court judgment, the federal court lacks subject matter jurisdiction. *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144,

1148 (10th Cir. 2002) (citation omitted), *overruled in part on other grounds by Exxon Mobil Corp.*, 544 U.S. 280 (2005).

During conferral, Plaintiff argued that *Rooker-Feldman* and state preclusion doctrines, such as *res judicata* and collateral estoppel, cannot apply here because he was not a named party to the State Court Litigation and, although he sought to be made a party and asserted objections and motions to that effect, those attempts were ignored.  ECF 17.  Plaintiff's position ignores the nature of the State Court Litigation, a receivership involving particular properties and their attendant claims and interests.  Moreover, the doctrine is clearly applicable to a situation such as this where Plaintiff's Complaint seeks to *modify or set aside* a state court judgment on the basis that those proceedings have led to that incorrect judgment.  *See, e.g.*, *Mayotte v. U.S. Bank Nat'l Ass'n, as Tr. for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates, Series 2006-4*, 880 F.3d 1169, 1174 (10th Cir. 2018) (quoting *Exxon Mobil*, 544 U.S. at 284).

Defendants are unaware of Tenth Circuit authority directly addressing the circumstance here, namely, whether a claimant in a state court receivership proceeding seeking to enforce his or her interests in a property, may then initiate a federal court action based on the orders issued in that proceeding that have conclusively addressed the issues complained of in federal court. However, in *Bednar v. RCB Bank (In re Bednar)*, the Tenth Circuit recently affirmed dismissal of claims in bankruptcy court under *Rooker-Feldman*, finding that the claims stemmed from the plaintiff's disagreement with final state court orders for foreclosure of debts secured by his former primary residence.  No. WO-19 001, 2019 WL 3928844, *1 (10th Cir. BAP Aug. 20, 2019) (unpublished).  The *Bednar* court agreed with the bankruptcy court that Plaintiff's claims, including his allegations related to violations of the bankruptcy discharge injunction and an

alleged conspiracy, were improper collateral attacks on the state courts' *in rem* foreclosure judgments. *Id.* at * 9, 13. Thus, similar to this case, *Rooker-Feldman* applied where claimant lost a purported property interest.

Additionally, authority from other jurisdictions is instructive. In the recent case of *Dorce v. City of New York*, the Southern District of New York recognized that "the *Rooker-Feldman* doctrine can apply to federal court plaintiffs who were not personally named as parties in the state court action but who were deprived of a property interest by a judgment in state court." 460 F. Supp 3d 327, 337 (S.D.N.Y. 2020); s*ee also Halpern v. Wilf*, 99-Civ-10984-JGK, 2000 WL 1277300, *4 (S.D.N.Y. 2000) (finding plaintiff's federal claims against receiver that stemmed from liquidation of his various partnership interests were subject to *Rooker-Feldman* doctrine); *Finnegan v. Clark*, No. 18-cv-00330-SJO-KES, 2018 WL 2972504, *4-5 (C.D. Cal. 2018) (*Rooker-Feldman* applied in federal court action that was a *de facto* appeal of state court receivership proceedings).

On a more substantive front, Plaintiff's Federal Complaint is not merely seeking a result that is inconsistent with the State Court Litigation, but rather, it seeks a ruling that the State Court Litigation and the orders entered thereto are invalid. ECF 1 at ¶ 107. This directly implicates *Rooker-Feldman*. *Mayotte*, 880 F.3d at 1175. "[B]arred claims are those 'complaining of injuries caused by state-court judgments.'" *Campbell v. City of Spencer*, 682 F.3d 1278, 1283 (10th Cir. 2012) (quoting *Exxon Mobil*, 544 U.S. at 284). Both the *Mayotte* and *Campbell* cases are illustrative. In *Mayotte*, the Tenth Circuit was faced with a question over whether Plaintiff's claims against creditors regarding a "nonjudicial" foreclosure proceeding pursuant to Colo. R. Civ. P. 120 were barred by *Rooker-Feldman*. The Tenth Circuit held they

were not, as Plaintiff did not seek to unwind the foreclosure sale but sought damages related to the creditors' actions prior to the foreclosure proceeding.  Thus, the plaintiff could establish her claim without setting aside, or even considering the validity of, the Rule 120 decision.  *Id.* at 1176.

In *Campbell*, a horse owner brought a § 1983 action against two municipalities, alleging that the seizure of her horses violated the Fourth, Fifth, and Eighth Amendments. *Campbell*, 682 F. 3d at 1279.   The Tenth Circuit held it had jurisdiction over the Fourth Amendment claims because they were independent of the state court proceedings.  *Id.* at 1285.  However, *Rooker-Feldman* barred the takings claim and excessive fines claim under the Fifth and Eighth Amendments. *Id.* at 1284-85.  The Tenth Circuit held that, "the deprivation of property that was allegedly without just compensation or due process was the deprivation ordered by the state court.  Thus, this claim has merit only if the state-court forfeiture order was unlawful on the record before that court.  In the words of *Exxon Mobil,* the claim is one 'brought by [a] state-court loser[ ] complaining of [an] injur[y] caused by [a] state-court judgment[ ].'"  *Id.* at 1284 (quoting *Exxon Mobil*, 544 U.S. at 284).  Similarly, for the Eighth Amendment claim, the Tenth Circuit held that the imposition of a bond and the forfeiture of the horses were acts of the state court and therefore, "the merits of this claim cannot be stated except in terms of the state-court judgment" and "[t]he alleged constitutional wrong was the content of the judgment."  *Id.* at 1285.

The same result is warranted here as in *Campbell*.  Plaintiff's claims attack the validity of the State Court Litigation, alleging it was allowed to proceed against the wrong party, despite Plaintiff's protestations, confirmed excessive and unconstitutional fines, and notably, improperly determined Denver's liens were senior to Plaintiff's.  ECF 1 at ¶¶ 22-26, 31-33, 36-38.  As in

*Campbell*, the merits of Plaintiff's claims cannot be determined without regard to the state judgments.  Plaintiff explicitly asks this Court to overturn the Denver District Court's ruling on the validity of the DRMC provisions and the lien priority. *See* Exhibit F. While the Complaint does include allegations regarding Denver's treatment of the Properties, these allegations are vague, attenuated, and without regard to time or a sense of how they fit within Plaintiff's claims. ECF 1 at ¶¶ 27-30.

       **2.**      **Colorado Preclusion Law Also Applies**

Matters that implicate *Rooker-Feldman* also frequently implicate state law governing claim and issue preclusion.  *E.g.*, *Exxon Mobil*, 544 U.S. at 293-94.  The doctrine of issue preclusion, often referred to as collateral estoppel, bars relitigation of issues necessary to the outcome of a prior action.  *Pomeroy v. Waitkus,* 517 P.2d 396, 399 (1973).  In any case in which issue preclusion is invoked, the proponent of the doctrine must show that: (1) the issue sought to be precluded is identical to an issue actually and necessarily determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.  *E.g.*, *Sunny Acres Villa, Inc. v. Cooper,* 25 P.3d 44, 47 (Colo. 2001).

Plaintiff's central allegations that Defendants improperly proceeded against Tele Comm in the State Court Litigation, the fines were excessive, and that his deeds of trust should have been deemed senior to Denver's liens directly implicate issue preclusion.  These issues were conclusively determined by the Denver District Court and such orders were certified as final

judgments pursuant to Colo. R. Civ. P. 54(b).  Plaintiff argues, similar to the argument regarding *Rooker-Feldman*, that he was not a party or in privity with any party.  ECF 17.  However, this ignores that Plaintiff was a claimant in the receivership action and filed a number of objections and motions with court, thus subjecting himself to the Denver District Court's jurisdiction, as well as appearing before the court during hearings to argue his position.  *See, e.g.*, *Frandsen v. Westinghouse*, 46 F.3d 975, 978 (10th Cir. 1995) ("[C]ollateral estoppel does not always require that the parties be the same.") (citing *SIL-FLO, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1520 (10th Cir. 1990)); *Foster v. Pluck*, 394 P. 3d 1119, 1125 (Colo. 2017) (focusing primarily on claim preclusion but recognizing that "a significant number of state and federal jurisdictions have allowed for the general elimination of mutuality in the case of defensive issue preclusion").

Here, Plaintiff was not denied the opportunity to present his arguments and press his position, and he is no stranger to the judgments issued in the State Court Litigation.  He simply wants this Court to overturn them.  Moreover, Plaintiff did not appeal the April 1 or September 13, 2019 Orders or attempt to bring his disputes, if any that were not addressed, to the Denver District Court following discharge of the Receiver and dismissal of the case, despite being enjoined.  Given these circumstances, this Court should find Plaintiff's claims are subject to issue preclusion, as well.

**B.  Defendants are Each Immune for Unique Reasons**

**1.      Denver and M&J are Immune**

**a.      Denver is Immune Pursuant to *Monell***

To state a claim under 42 U.S.C. § 1983, a plaintiff must plead facts sufficient to establish: (1) that defendant deprived him of a federal right, and (2) that defendant acted under

color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Robbins v. Oklahoma*, 519 F.3d 1242, 1248-49 (10th Cir. 2008). When such claims are stated against a governmental entity, a plaintiff must also prove that the conduct complained of was the result of an established custom and policy. *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694-95 (1978); *Dodds v. Richardson*, 614 F.3d 1185, 1201-02 (10th Cir. 2010). The policy or custom requirement separates acts of the municipality from acts of employees to ensure "municipal liability is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-80 (1986). At a minimum, a party asserting a claim against a governmental entity must plead facts to identify the unconstitutional custom or policy and the means by which it caused a constitutional violation. *See, e.g.*, *Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997). If the plaintiff's complaint asserts only conclusory allegations, the allegations are insufficient to state a claim. *Id.; see also Granato v. City & County of Denver*, 11-cv-00304-MSK, 2011 WL 3820730, * 8 (D. Colo. 2011).

In this instance, Plaintiff's Complaint asserts, in a conclusory fashion, multiple times, that Denver maintains certain policies, practices, and ordinances that permit it to engage in unconstitutional activity. ECF 1 at ¶¶ 11, 52-54, 63-64. It is clear, however, that Plaintiff's claim as to Denver is rooted in the subject ordinances. *See id.* at ¶¶ 54, 71, 73. Even assuming Plaintiff could clear the first hurdle and point to the ordinance as establishing an unconstitutional policy, Plaintiff fails to clear the second; namely that the receivership action that he focuses on caused the loss of his purported equity in the Properties as a lienholder. *See, e.g.*, *Hardich v. City of Detroit, Michigan*, 876 F.3d 238, 244-45 (6th Cir. 2017) (relying upon *Pembaur*, 475 U.S. at 484)).

###### b.      M&J is Entitled to Qualified Immunity

Plaintiff names Denver's outside counsel M&J in his conspiracy claim and alleges all

defendants are equally liable for the violation of Plaintiff's constitutional rights under 42 U.S.C.

§ 1983. ECF 1 at ¶ 103.  As all Defendants have asserted various bases for immunity for the

other claims, it stands to reason that no conspiracy claim may survive for actions for which the

parties may not be prosecuted.  *See, e.g.*, *Mowbray v. Cameron Co., Tex.*, 274 F.3d 269, 278 (5th

Cir. 2001).  Nonetheless, under the circumstances, M&J would likely also be entitled to qualified

immunity as a defense to the conspiracy to violate claims brought under § 1983. *See Bisbee v.*

*Bey,* 39 F.3d 1096, 1101 (10th Cir. 1994) (analogizing § 1985 conspiracy claim to § 1983 and

the application of qualified immunity).

Qualified immunity protects from civil liability governmental officials performing

discretionary functions as long as their conduct does not violate clearly established constitutional

rights of which a reasonable person would have known. *Moody v. Ungerer*, 885 P.2d 200, 202

(Colo. 1994).  The Supreme Court has outlined a two-pronged test for qualified immunity. Under

the first prong, the court considers whether the allegations, viewed in the light most favorable to

the plaintiff, make out a violation of a constitutional right.  If they do, the second prong considers

whether the right in question was "clearly established" at the time of the defendants' alleged

violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  A government "official's conduct

violates clearly established law when, at the time of the challenged conduct, '[t]he contours of

[a] right [are] sufficiently clear' that every 'reasonable official would have understood that what

he is doing violates that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted).

Of note, qualified immunity is available to private attorneys providing contractual services to a governmental body, such as M&J.  *See, e.g.*, *Filarsky v. Delai*, 566 U.S. 377, 387 (2012); *Warner v. Grand County*, 57 F.3d 962, 964 (10th Cir. 1995).  Thus, M&J, a private law firm, acting through its individual attorneys, should be entitled to the same qualified immunity that would be available to, for instance, the Denver City Attorney's Office.

Here, and as noted below, Plaintiff's allegations against the law firm defendants are particularly threadbare, such that their inclusion is noted at one point by a parenthesis.  ECF at ¶ 99.  Plaintiff fails entirely to name a specific action taken by M&J. It is clear M&J represented Denver in the aforementioned matters, which resulted in a number of valid and enforceable state court orders and judgments.  That Plaintiff disagrees with the State Court Litigation and has characterized it as an "unconstitutional scheme" does not warrant M&J's involvement as a defendant.  Of note, there is no clearly established right for Plaintiff's purported equity in the Properties to be preserved or shielded from the collection action and resulting receivership initiated by M&J.  Moreover, Defendants are unaware of any on-point authority for such an allegation.  *See Cox v. Glanz*, 800 F.3d 1231, 1247 (10th Cir. 2015).   M&J simply does not belong in this case.

### 2.    F&W is Immune Under the Barton Doctrine

F&W was involved in the State Court Action as counsel for Sterling, as receiver.  ECF 1 at ¶¶ 22, 40.  F&W is immune from suit outside the court that appointed the receiver under the *Barton* doctrine.  *Barton v. Barbour*, 104 U.S. 126, 136 (1881) (receiver has same judicial immunity as appointing judge and cannot be sued outside of appointing court); *T&W Inv. Co. v. Kurtz*, 588 F.2d 801, 802 (10th Cir. 1978) (receiver has same judicial immunity as judge).  The

*Barton* doctrine gives the same judicial immunity to agents of a receiver that the receiver itself has. *Friedlander v. Cook*, 2007 WL 5685361, *2 (D.N.M. Sept. 30, 2007); *Dickey v. City of Boston*, 2016 WL 7365167, *5 (D. Mass. Dec. 19, 2016) (granting motion to dismiss filed on behalf of agents of receiver); *Jonas v. Jonas*, 2014 WL 978099, *4 (D. Mont. Mar. 12, 2014) ("This Court has already ruled Judge McNeil had subject matter jurisdiction and is entitled to judicial immunity.  It is incontrovertible that such immunity extends to the appointed receiver, as well as the receiver's agents."). As such, F&W is immune from this suit.  Any complaints about the conduct of F&W had to be brought before the court that appointed the receiver in the State Court Litigation.

In the conferral leading up to this motion, Plaintiff claimed *Barton* somehow did not apply because F&W was involved in the alleged conspiracy.  It is true F&W is named only in the conspiracy claim, but this argument otherwise fails for two reasons.  First, Plaintiff has cited no cases holding *Barton* does not apply to a conspiracy allegation.  Second, under *Twombly*, allegations in a complaint must be plausible, not merely possible or conceivable.  *Twombly*, 550 U.S. at 555.  Here, as discussed more fully below, the allegations of conspiracy involving F&W fail this test.  For all these reasons, F&W should be dismissed from the case.

### 3.      The State of Colorado is Immune

#### a.      Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution bars federal jurisdiction over private claims for money damages against a state, its instrumentalities, and state officials acting in their official capacity.  *Tennessee v. Lane*, 541 U.S. 509, 517-19 (2004); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64-66 (1989) (holding Congress did not abrogate sovereign

immunity through § 1983, and state agencies and employees acting in their official capacity are not "persons" subject to suit under § 1983).

Plaintiff in this case seeks damages against the State of Colorado and its "judicial branch". ECF 1, ¶¶ 57-58, 65-66, 75, 77, 84, 88, 102, 104. Because the Eleventh Amendment bars these claims, this Court lacks subject matter jurisdiction, and Plaintiff's claims for money damages must be dismissed.

Moreover, even if the Eleventh Amendment did not bar damages claims against the State of Colorado or its "judicial branch," Plaintiff has failed to state a claim for damages against the State of Colorado brought pursuant to § 1983. The State is not considered a "person" subject to suit pursuant to § 1983. *Hafer v. Melo*, 502 U.S. 21, 26 (1991).

### b.     Judicial Immunity

The State is also immune because the Denver District Court and its judicial officers are entitled to absolute immunity for all actions taken while presiding over the proceedings relative to Plaintiff's property interests. Few doctrines are more solidly established in common law than the absolute immunity of judges from liability for damages for acts committed within their judicial discretion. *Pierson v. Ray,* 386 U.S. 547, 553-54 (1967). The doctrine of judicial immunity bars a suit for damages against a judge unless the judge's conduct was taken without any colorable claim of jurisdiction. *Stump v. Sparkman,* 435 U.S. 349, 356-57 (1978). That same immunity continues even if the judge's "exercise of authority is flawed by the commission of grave procedural errors." *Id.* at 359. Judicial immunity is not overcome by allegations of malice or bad faith. *Guttman v. Khalsa*, 446 F.3d 1027, 1033-34 (10th Cir. 2006). In sum, judicial immunity applies "however erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff."

*Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985). The U.S. Supreme Court has emphasized that absolute judicial immunity was not affected by or abolished by § 1983. *Pierson,* 386 U.S. at 554. Therefore, Plaintiff's constitutional claims are barred.

While Plaintiff's claims are asserted against the "State of Colorado," the claims are directed at its "judicial arm," specifically here the Denver District Court. There can be no real dispute that the actions of the Denver District Court judges form the basis of Plaintiff's claims against the State. In fact, the State is identified as a party in the General Allegations "through its judicial arm and its employees/judges." ECF 1 at ¶ 22. Plaintiff cannot avoid the judicial immunity doctrine through artful pleading naming the State as defendant instead of a judicial officer. There can also be no dispute that the actions complained of against the "judicial arm and its employees/judges" are judicial acts. "[T]he factors determining whether an act by a judge is a 'judicial' one relate to the nature of the act itself, *i.e.*, whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.*, whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362.

Plaintiff alleges the State Court Litigation proceeded against Tele Comm, "even though Tele Comm and Plaintiff presented clear evidence . . . to Colorado . . . that Mr. McCarville was the owner of the Properties." ECF 1 at ¶ 22. Plaintiff further alleges that "Colorado permitted the action to proceed . . . and encouraged the same through the *decisions of the judges who oversaw the State Court Litigation." Id.* at ¶ 25 (emphasis added). Plaintiff simply did not agree with the outcome in the State Court Litigation. Because the unidentified judicial officers' decisions (or even inaction) constituted "a judicial act," Plaintiff's claims are barred by judicial immunity. *Stump*, 435 U.S. at 362.

**C. Plaintiff fails to state a claim for a conspiracy to violate his constitutional rights.**

Plaintiff claims Defendants conspired to violate his constitutional rights. ECF 1 at ¶¶ 95-102. Whether a plaintiff has stated a plausible claim for relief is a context-specific inquiry requiring "the court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A conspiracy claim "must allege *specific* facts showing an agreement and concerted action amongst the defendants . . . . [c]onclusory allegations of conspiracy are insufficient." *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998) (emphasis added); *see also Twombly*, 550 U.S. at 556. To show an agreement, a plaintiff must state facts demonstrating a meeting of the minds between the alleged conspirators. *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir. 1994).

Because Plaintiff brings the conspiracy claim against private actors, he must additionally allege specific facts giving rise to an inference that "both public and private actors share a common, unconstitutional goal." *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 596 (10th Cir. 1999); *see also Hunt*, 17 F.3d at 1268. Where the state officials allegedly involved are immune from suit, the plaintiff has a higher pleading burden. *Id.*[9]

Plaintiff alleges in a wholly conclusory fashion that Denver, Sterling, M&J, and F&W agreed to use the state courts to sell the Properties and keep the proceeds of the sales for themselves as retaliation for Plaintiff's work related to the Taxpayer's Bill of Rights, Article X, Section 20 of the Colorado Constitution ("TABOR"). ECF 1 at ¶¶ 97, 99. These Defendants also

---

[9] As explained above, although Plaintiff brings his claims against the State, the only State actors mentioned are the judges who presided over the State Court Litigation. ECF 1 at ¶¶ 25, 48, 57, 65, 75, 84, 102. Plaintiff's attempt to avoid judicial immunity should not override this higher pleading standard.

allegedly timed the State Court Litigation to occur while Plaintiff was in prison for tax evasion. *Id.* at ¶ 101. And the State, via its judicial officers, allegedly allowed this unconstitutional scheme to occur. *Id.* at ¶ 102. These allegations are insufficient to demonstrate an agreement to violate Plaintiff's rights.

Plaintiff's allegations of an agreement are "collective allegations" disfavored in suits with multiple defendants, which amount to nothing more than an "undifferentiated contention that 'defendants' infringed his rights." *Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013). Plaintiff entirely fails to allege any specific actions by M&J or F&W and does not allege the judges were aware of or participated in the alleged agreement or concerted action. *Id.*; *see also Lucero v. Koncilja*, 781 F. App'x 786, 789 (10th Cir. 2019); *Jiricko v. Frankenburg Jensen Law Firm*, 764 F. App'x 664, 669 (10th Cir. 2019). Thus, Plaintiff alleges that only Denver and Sterling took any affirmative action. Even accepting as true the nonconclusory allegations against Denver and Sterling, such independent conduct does not suffice to show an agreement. *Twombly*, 550 U.S. at 557; *Salehpoor v. Shahinpoor*, 358 F.3d 782, 789 (10th Cir. 2004). The Complaint contains no facts showing any communications between Denver and Sterling — or any other Defendant — suggesting an agreement or concerted action. *See Abercrombie v. City of Catossa, Okl.*, 896 F.2d 1228, 1231 (10th Cir. 1990). Ultimately, the allegations are merely formulaic recitations of the elements of the claim. *Twombly*, 550 U.S. at 555.[10]

The alleged motivation to conspire against Plaintiff — retaliation for TABOR — is not entitled to an assumption of truth. *Iqbal*, 556 U.S. at 681. Plaintiff alleges no facts showing any

---

[10] Plaintiff's pleading "upon information and belief" cannot save the conclusory allegations. *See e.g.*, *Harris v. AmeriGas Propane, Inc.*, 2012 WL 7051302, *7 (D. Colo. Dec. 5, 2012).

Defendant knew Plaintiff was involved with TABOR or any Defendant had any particular connection to, or personal feelings about, TABOR or Plaintiff. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1221 (10th Cir. 2011). Similarly, Plaintiff does not allege any Defendant was aware of Plaintiff's incarceration. As well, the allegation that Defendants timed the proceedings to occur while Plaintiff was incarcerated fails as Plaintiff participated in the proceedings both during and after his incarceration. *See* Exhibit B; Exhibit E; Exhibit F.[11]

Plaintiff raises as evidence of the conspiracy a separate agreement to proceed against Tele Comm rather than Mr. McCarville, when Defendants knew Tele Comm had no resources, incentive, or ability to defend the action. ECF 1 at ¶ 97. But Plaintiff alleges no facts tending to show anyone "agreed" to proceed against Tele Comm rather than Mr. McCarville. The Complaint contains no facts showing any Defendant knew of Tele Comm's resources or priorities. And Tele Comm in fact participated in the proceedings with counsel.[12] *See* Exhibit B (showing multiple motions and orders regarding withdrawal of Tele Comm's counsel)

Lastly, Plaintiff's allegations do not plausibly allege a conspiracy because an "obvious alternative explanation" for Defendant's actions exists. *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567. Denver initiated the state court litigation merely to enforce an administrative judgment. *See* Exhibit B; Exhibit D. Plaintiff does not allege the administrative proceeding was

---

[11] The Court may consider state court orders without converting this motion to one for summary judgment. *See, e.g.*, *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).

[12] Plaintiff claims Defendants prevented Tele Comm from participating in the state court litigation by claiming Tele Comm had to be represented by counsel. ECF 1 at ¶ 98. But Plaintiff admits Tele Comm is a limited partnership, *id.* at ¶ 13, which must be represented by legal counsel as a matter of law where the amount in controversy exceeds $15,000, § 13-1-127(1)(e), (2)(a), C.R.S. (2020), which Plaintiff admits applies to the state court litigation, ECF 1 at ¶ 26. Thus, Defendants alleged argument regarding Tele Comm's ability to proceed without legal counsel is irrelevant.

unlawful. Stripping away the conclusory allegations, *Iqbal*, 556 U.S. at 681, reveals Denver did nothing more than enforce ordinances enacted long before Plaintiff had any interest in the Properties, *see* DRMC 10-138, -139, -140; Exhibit F, pp. 2-4 (discussing history of relevant ordinances); M&J did nothing more than represent Denver in the litigation; Sterling did nothing more than execute its duties as the receiver;[13] F&W did nothing more than represent Sterling; and the state court judges did nothing more than apply the law.

Essentially, the conspiracy claim is that Defendants conspired to deprive Plaintiff of his property by following the DRMC, which provided that city fines were senior to pre-existing deeds of trust.  In determining that the DRMC was valid, the judge in the State Court Litigation granted Denver's motion that relied primarily on *Wasson v. Hogenson*, 196 Colo. 183, 583 P.2d 914 (1978), and *Town of Avon v. Westar Bank*, 151 P.3d 631 (Colo. App. 2006).  For the conspiracy allegations in this case to work, the entire Colorado Supreme Court as it sat in 1978 and a division of the Colorado Court of Appeals from 2006 would have had to have been in on the conspiracy because here the trial court simply followed existing precedent.  That is not only not plausible, it was not even alleged.

Thus, Plaintiff's allegations do not nudge the claim past the much more plausible explanation that each Defendant simply executed its respective duties within the State Court Litigation. *See Atkins v. Sweetwater Cnty. Sheriff's Office*, 463 F. App'x 751, 754-55 (10th Cir. 2012); *Patton v. West*, 276 F. App'x 756, 758 (10th Cir. 2008); *see also Banks v. Opat*, 814 F. App'x 325, 337 (10th Cir. 2020) ("[P]rivate party's mere compliance with a court order does not

---

[13] To the extent Plaintiff's allegations could show improper actions by Sterling, which they cannot due to their conclusory nature, those actions cannot be imputed to other Defendants absent specific facts suggesting an agreement or common purpose.

constitute state action."). Given the number of assumptions Plaintiff's allegations ask this Court to make, his Complaint fails to raise the right to relief above the speculative level. *See Twombly*, 550 U.S. at 555, 557, 565 n.10. For these reasons, Plaintiff's claim for conspiracy fails and must be dismissed.[14]

## CONCLUSION

For the reasons stated herein, Plaintiff's claims against Denver, M&J, F&W, and the State must be dismissed.

Respectfully submitted this 18th day of November 2020.

| | |
|---|---|
| **KRISTIN M. BRONSON** | **PHILLIP J. WEISER** |
| **Denver City Attorney** | **Attorney General** |
| By: */s/ Edward J. Gorman* | */s/ Lauren Davison* |
| Edward J. Gorman, Esq. | Lauren Davison |
| Paige A. Arrants, Esq. | Assistant Attorney General |
| Assistant City Attorneys | Amy Colony |
| edward.gorman@denvergov.org | Senior Assistant Attorney General |
| paige.arrants@denvergov.org | lauren.davison@coag.gov |
| 201 West Colfax Ave, Dept. 1207 | amy.colony@coag.gov |
| Denver, CO 80202 | 1300 Broadway, 10th Floor |
| (720) 913-3275 | Denver, CO 80203 |
| *Attorneys for Defendant City and* | (720) 508-6000 |
| *County of Denver* | *Attorneys for Defendant State of Colorado* |
| | |
| */s/ Jacques A. Machol, III* | */s/ John M. Tanner* |
| Jacques A Machol, III | John M. Tanner |
| Machol & Johannes, LLC | Fairfield & Woods, P.C. |
| 700 17th Street, Suite 200 | 1801 California Street, Suite 2600 |
| Denver, CO 80202 | Denver, CO 80202 |
| (303) 539-3162 | (303) 830-2400 |
| jm@mjfirm.com | jtanner@fwlaw.com |
| *Attorneys for Defendant* | *Attorney for Defendant Fairfield &* |
| *Machol & Johanes, LLC* | *Woods, P.C.* |

---

[14] Because Sterling has not been served, Defendants are not moving to dismiss the conspiracy claim against Sterling. However, because there can be no "conspiracy of one," and because the claim must be dismissed against the served Defendants, the conspiracy claim must be dismissed entirely.

## CERTIFICATE OF SERVICE (CM/ECF)

I HEREBY CERTIFY that on the 18th day of November 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record as follows:

Aaron C. Garrett
Nathan R. Garcia
Nonprofit Legal Services of Utah
623 East 2100 South
Suite B1
Salt Lake City, UT  84106
aaron@nonprofitlegalservices.com
nathan@nonprofitlegalservices.com
*Attorneys for Plaintiff*

Jacques A Machol, III
Machol & Johannes, LLC
700 17th Street, Suite 200
Denver, CO 80202
(303) 539-3162
*Attorneys for Defendant*
*Machol & Johanes, LLC*

Amy Christine Colony
Lauren Eileen Davison
Colorado Attorney General's Office
Ralph L. Carr Colorado Judicial Center
1300 Broadway
Denver, CO  80203
amy.colony@coag.gov
lauren.davison@goag.gov
*Attorneys for Defendant State of Colorado*

John M. Tanner
Fairfield & Woods, P.C.
1801 California Street
Suite 2600
Denver, CO 80202
P: (303) 830-2400
Jtanner@fwlaw.com
*Attorney for Defendant Fairfield &*
*Woods, P.C.*

*/s/ Shannon Egan*
Shannon Egan, Paralegal
City and County of Denver
201 West Colfax Avenue, Dept. 1207
Denver, Colorado 80202-5332