IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-02099-RBJ

DOUGLAS BRUCE, an individual,

    Plaintiff,

v.

CITY AND COUNTY OF DENVER, a municipal government within the State of Colorado,
STERLING CONSULTING CORPORATION, a Colorado Corporation,
STATE OF COLORADO,
FAIRFIELD & WOODS, P.C., a Colorado Professional Corporation, and
MACHOL & JOHANNES, LLC, a Colorado Limited Liability Corporation,

    Defendants.

---

ORDER GRANTING MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

---

    This matter is before the Court on Defendants' motions to dismiss (ECF Nos. 24, 49). For the reasons discussed below, the motion to dismiss is GRANTED.

## I. BACKGROUND

    The following facts do not appear to be disputed. This case arises from a receivership created in state court to oversee the management of two parcels of real estate located in Denver, Colorado. ECF No. 1. One parcel is located at 601-609 Lipan Street (the Lipan property). The other is at 47th and York Street (the York property). *Id.* In 1997, plaintiff Douglas Bruce transferred ownership of the Lipan property to Tele Comm Resources, LP (Tele Comm). *Id.* In

1

return, he received a note (the Lipan trust deed) for $230,000. *Id.* Plaintiff recorded that deed in 1998. In 2003, Mr. Bruce transferred the York property to Tele Comm for a note (the York trust deed) for $2.4 million. *Id.* He recorded the York trust deed in 2004.

In 2015, defendant City and County of Denver (Denver) filed several lawsuits against Tele Comm in an effort to collect fines and assessments issued against the Lipan and York properties based on alleged violations of various city ordinances. *Id.* These suits were eventually consolidated into one proceeding. Sterling Consulting Corporation ("Sterling" or "the receiver") was appointed by the state court on April 15, 2016 to oversee the claims concerning the properties and their disposition. *Id.* Mr. Bruce was not a party to the state court proceedings, despite repeated requests to be made one. *Id.* Nevertheless, throughout the four-year pendency of the state court litigation, Mr. Bruce filed motions and objections. ECF No. 24.

On April 6, 2018, the state court issued an order that determined the priority of liens on the York and Lipan properties. *Id.* The court determined that Denver's penalty liens for neglected and derelict buildings were superior to all other liens. *Id.* On July 18, 2018, the court entered orders confirming the sale of the Lipan property. On February 22, 2019 the court entered an order confirming the sale of the York property. *Id.* at n.2.

The state court litigation concluded on April 1, 2019. *Id.* At that time the court certified a number of previous orders as final judgments, including the April 6, 2018 "Order Determining Priority of Liens" and the July 18, 2018 "Order Confirming Sale of Lipan Property." *Id.*

On September 13, 2019, the court approved Sterling's third report and discharged Sterling as receiver. *Id.* The court approved all actions taken by the receiver and found that all the claims allowed by the court had been paid by the receiver. *Id.* It ordered Sterling to pay any balance of funds to Denver once the order was final and could no longer be appealed. *Id.* The court also ordered that anyone who had appeared in the case or who had notice of it was enjoined from raising a dispute regarding the conduct of the receiver in any other court or by proper appeal. *Id.* Plaintiff in the underlying suit, Tele Comm, did not appeal the April 2019 order or the September 2019 order. *Id.* Mr. Bruce did not challenge either order. *Id.* Mr. Bruce filed the instant suit on July 17, 2020.

## II.     STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a court may dismiss a complaint for lack of subject matter jurisdiction. Rule 12(b)(1) motions come in two forms: "a facial attack on the complaint's allegations as to subject matter jurisdiction [that] questions the sufficiency of the complaint" or "a factual attack" on the facts upon which subject matter jurisdiction depends. *Mayotte v. US Bank Nat'l Ass'n*, No. 14-CV-3092-RBJ-CBS, 2016 WL 943781 (D. Colo. 2016) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)).

When reviewing a facial attack on subject matter jurisdiction, the court must accept the allegations in the complaint as true. *Holt*, 46 F.3d at 1002. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. *Id.* at 1003. The Court has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts under Rule 12(b)(1). *Id.* In such instances, a

court's reference to evidence outside the pleadings does not convert the motion to dismiss into a Rule 56 motion for summary judgment. *See id.*

### III.     SUBJECT MATTER JURISDICTION

Defendants contend that this Court does not have subject matter jurisdiction over plaintiff's claims due to the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine provides that because appellate review of state court judgments is vested solely in the United States Supreme Court, that review is not vested in federal district courts. *In re Smith*, 287 F. App'x 683, 684 (10th Cir. 2008) (unpublished) (quoting *Crutchfield v. Countrywide Home Loans*, 389 F.3d 1144, 1147 (10th Cir.2004)).

*Rooker-Feldman* disallows "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "What is prohibited under *Rooker-Feldman* is federal action that tries to modify or set aside a state-court judgment because the state proceedings should not have led to that judgment. *Mayotte v. U.S. Bank Nat'l Ass'n for Structured Asset Inv. Loan Tr. Mortg. Pass-Through Certificates*, 880 F.3d 1169, 1174 (10th Cir. 2018) (emphasis omitted). Put another way, *Rooker-Feldman* bars litigations of federal claims that are "inextricably intertwined with a state court judgment." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1075 (10th Cir. 2004).

The *Rooker-Feldman* doctrine should not be applied against persons or entities who were not a party in the underlying state court suit. *See Johnson v. Rodrigues (Orozco)*, 226 F.3d 1103,

1109 (10th Cir. 2000). In determining whether a plaintiff in federal court was a party to an underlying state court case for purposes of a *Rooker-Feldman* analysis, the question is whether that plaintiff had a reasonable opportunity to raise his federal claims in the state court proceedings.[1] *See id*. If the plaintiff in the federal case had no opportunity to litigate the state court case, the state court decision would not be inextricably intertwined with the federal court litigation, and the *Rooker-Feldman* doctrine would not apply. *Id.*

Though I have not found caselaw directly applicable to the facts of this case from the Tenth Circuit, a Second Circuit case, *Dorce v. City of New York*, is instructive. 2 F.4th 82 (2d Cir. 2021). There, federal court plaintiffs had property seized by New York City under the Third Party Transfer Program ("TPT program"). *Id.* at 88. Under that program, the city used its *in rem* foreclosure powers to collect tax liens on abandoned or blighted property. *Id.* at 88–89. Once the property had been foreclosed, the city would transfer the property in fee simple absolute to third parties authorized to participate in the program. *Id.* at 89. The federal court plaintiffs were not named parties in the state court *in rem* foreclosure actions. *Id.* at 91–92. The plaintiffs requested that the federal court declare the relevant provisions of the New York City Administrative Code unconstitutional. *Id.* at 92–93. They also requested an injunction to prevent the city from beginning any more of this type of *in rem* proceedings, as well as money damages. *Id.*

---

[1] Whether a federal court plaintiff did not have an opportunity to litigate her claims in the underlying state-court proceedings is *only* relevant to the *Rooker-Feldman* analysis to the extent it informs whether the federal court plaintiff was a "party" in the underlying case. *Smith*, 287 F. App'x at 686.

The Second Circuit held that, though the federal court plaintiffs were not named parties in the state *in rem* foreclosure actions, the *Rooker-Feldman* doctrine could still be applicable. *Id.* at 103. The court wrote that, were they to conclude that *Rooker-Feldman* was inapplicable where the federal court plaintiffs were not named parties in the state *in rem* proceedings, state court decisions based on *in rem* jurisdiction would have "inferior force to state court decisions based on other types of jurisdiction, which could be reviewed only by the Supreme Court." *Id.*

### A. Application of *Rooker-Feldman*

1. Mr. Bruce is a Party for Purposes of a *Rooker-Feldman* Analysis.

Mr. Bruce was not a "party" to the state court litigation in the traditional sense. Although a non-party would "ordinarily lack a reasonable opportunity to litigate claims," *Johnson*, 226 F.3d at 1110, if Mr. Bruce still had that ability in this case, he could be a "party" for purposes of the *Rooker-Feldman* analysis. I find that he did have, and exercised, that ability in this instance.

Mr. Machol, counsel for Denver in the state case, when asked whether Mr. Bruce was a party in the state case, responded:

> I guess in this context, the term party is somewhat ambiguous. I would say capital P, Party, Plaintiff or Defendant he is not. . .lowercase P, he is a party, but he's not a capital P, Party, Plaintiff or Defendant.

ECF No. 54-3 at 15. Mr. Tanner, counsel for the receiver in the state case, concurred with that description. *Id.*

Mr. Bruce's circumstances were not ordinary. He was under the jurisdiction of the court in the state court receivership—he voluntarily submitted himself to the court's

6

jurisdiction by filing a claim in the receivership.  *See* ECF No. 54-3 at 15.  He was permitted to file objections before the state court regarding the receivership.  *See* ECF No. 24-5.  He was not made a party, despite numerous attempts, but he was able to file motions, appear before the court, and contact the receiver.  *See* ECF No. 1.  Further, and importantly, there is no reason to believe that he could not have appealed the orders with which he disagreed.  *See* Clark, *Clark on Receivers* § 649(b) (3d Ed., 1959) (claimants in a receivership do not become parties to the original proceeding but rather become party to a proceeding ancillary to the jurisdiction between the original parties—and "if aggrieved may ask for review.").  Mr. Bruce has not alleged that he appealed or attempted to appeal the final judgment from the state court litigation.  *See* ECF No. 1.

      Mr. Bruce had reasonable opportunity to raise the issues in this case in the state court proceedings, and he did raise them.  He objected to the properties' being placed in a receivership and he objected to the foreclosure and sale of the properties.  ECF No. 24-5 at 11.  He specifically objected on the grounds that the foreclosure and sale violated his rights to substantive and procedural due process surrounding a deprivation of property and that the fines were so excessive that they violate the Eighth Amendment.  ECF No. 24-5 at 15.  These are the same claims and theories he pursues before this court.

      Receiverships are *quasi in rem* proceedings—personal jurisdiction must exist to commence a receivership, but once appointed, the receiver acts *in rem* over all estate property and against all parties with actual or constructive notice of the receivership.  *See* Clark, *Clark on*

*Receivers* § 70 (3d ed., 1959).  Mr. Bruce's challenge is analogous to the federal court plaintiffs' challenge in *Dorce*.  This was a *quasi in rem* proceeding and Mr. Bruce submitted to the jurisdiction of the court.  If *Rooker-Feldman* did not apply in this situation simply because Mr. Bruce was not a named party, the power of a state court acting under *in rem* or *quasi in rem* jurisdiction would be substantially diminished.  Mr. Bruce and those similarly situated as "non-parties" for purposes of a *Rooker-Feldman* analysis would be entitled to two appeals, one in state court and one in federal district court.

        2.       <u>Mr. Bruce Seeks Remedies for Injuries Caused by the State Court Judgment</u>

In his suit before this Court, Mr. Bruce seeks remedies for injuries caused by the state court judgment.  He alleges that the receiver's actions to foreclose on and sell the Lipan and York properties deprived him of property without substantive or procedural due process.  ECF No. 1.  He further claims that the fines imposed on these properties by Denver violated the Eighth Amendment's prohibition on excessive fines.  *Id.*  He also alleges that the receiver breached its fiduciary duties to him, and that all defendants engaged in a conspiracy to violate his constitutional rights.  *Id.*

Each of these claims seeks a remedy to an injury created by the state court judgment.  Though Mr. Bruce tries to claim that the foreclosure and sale of the York and Lipan properties were acts of Denver and the state of Colorado, the foreclosure and sale were direct results of the final judgment of the state court in the receivership.  *See* ECF No. 24-8.  Though Denver issued the fines, the "deprivation of property," which Mr. Bruce says violated his right to substantive

8

and procedural due process, was the result of the state court judgment. These alleged injuries to Mr. Bruce were caused entirely by the entry of the state court judgment. His first, second, and third causes of actions fall directly within the *Rooker-Feldman* doctrine. This Court does not have jurisdiction over those causes of action.

Likewise, his fourth cause of action, based on the Eighth Amendment, complains of an injury caused by the state court judgment. While the fines were imposed by Denver, they were enforced by the state court judgment. Mr. Bruce states that "Colorado actively participated through its judicial branch and the employment of judicial officers, without whose explicit consent and affirmative actions Denver could not have enforced its unconstitutional fines and taking." ECF No. 1. This statement admits that the injuries complained of in the fourth cause of action were directly caused by the entry of the state court judgment. If Denver's fines had not been enforced by the state court judgment, Mr. Bruce would not have suffered this alleged injury.

The fifth cause of action, an allegation of breach of fiduciary duty against the receiver is also subject to a *Rooker-Feldman* analysis. Mr. Bruce stated, "the [r]eceiver converted Plaintiff's property to itself through the imposition of exorbitant receivership fees, and to Denver through Denver's retention of the remaining sale proceeds, all with the imprimatur of the Colorado state court." ECF No. 1. This indicates that, without the state court judgment, without state court approval, the breach of fiduciary duty could not have occurred. As the breach of

fiduciary duty was caused by the decisions of the state court, this Court lacks jurisdiction to consider the fifth cause of action.

The sixth cause of action, alleging a conspiracy to violate Mr. Bruce's constitutional rights, also complains of an injury caused by the state court judgment. Mr. Bruce alleges that this conspiracy was to use the state court litigation to "sell the properties, keep the proceeds for themselves, thereby denying plaintiff [Mr. Bruce] the equity therein." ECF No. 1. The object of the alleged conspiracy was the state court judgment that allowed for foreclosure and sale of the York and Lipan properties. Until there was such a judgment, Mr. Bruce had no injury from the alleged conspiracy.

Each of Mr. Bruce's causes of action complains of an injury caused directly by the judgment entered in the state court litigation. Though the United States Supreme Court has been clear that the scope of the *Rooker-Feldman* doctrine is limited, these are circumstances in which it applies. A federal court plaintiff is complaining of injuries caused by a state court judgment. His injuries cannot be remedied without undoing the state court judgment. This Court does not have jurisdiction over Mr. Bruce's claims—he must seek his remedies elsewhere.

## ORDER

1. The motion to dismiss submitted by defendants City and County of Denver, State of Colorado, Fairfield & Woods, P.C., and Machol & Johannes, LLC, ECF No. 24, is granted. The claims against them are dismissed. As the prevailing parties, defendants are awarded their costs to be taxed by the Clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

2. The motion to dismiss submitted by defendant Sterling Consulting Corporation, ECF No. 49, is granted. The claims against it are dismissed. As a prevailing party, Sterling is awarded its costs to be taxed by the Clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

3. The case is dismissed without prejudice, and judgment will enter accordingly.

DATED this 4th day of October, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge